# Exhibit B

# FIRST AMENDMENT TO LEASE AGREEMENT

This First Amendment to Lease Agreement ("**Amendment**") is made and entered into this 20th day of May, 2020 (the "**Effective Date**"), by and between B.S. INGERSOLL, LLC, a Pennsylvania limited liability company, hereinafter referred to as "**Landlord**" and MEDICI 1150 N. AMERICAN STREET LLC, a Delaware limited liability company, hereinafter referred to as "**Tenant**".

WHEREAS, Landlord and Tenant entered into a lease agreement dated as of November 12, 2018 ("**Lease**"), whereby Tenant leases from Landlord and Landlord leases to Tenant, no less than 59,000 rentable square feet of space ("**Premises**") in the building located at 1150-1156 North American Street, Philadelphia, Pennsylvania 19104 ("**Building**"), the Premises being more particularly described therein; and

WHEREAS, the Outside Delivery Date in the Lease is currently September 31, 2019; and

WHEREAS, as of the date of this First Amendment, the Premises has not been delivered; and

WHEREAS, Section 1.6 of the Lease provides for the Rent Commencement Date to be extended one day for each day after the Outside Delivery Date until the actual Delivery Date has occurred; and

WHEREAS, due to the current COVID-19 pandemic, Pennsylvania Governor Wolf issued an order prohibiting the operation of non-life sustaining businesses, including the closure of all construction sites in Philadelphia as of 8 p.m. March 19, 2020 (the "**Order**"); and

WHEREAS, Landlord and Tenant have agreed to revise the rent schedule in order to address the rent abatement incurred up until the date of the Order, extend the Outside Delivery Date to account for the closure of all construction sites in Philadelphia as a result of the Order, and to allow Landlord to delivery possession of the Premises to Tenant in phases; and

WHEREAS, Landlord and Tenant wish to amend the Lease as follows;

NOW, THEREFORE, in consideration of these present and the agreement of each other, Landlord and Tenant agree that the Lease shall be and the same is hereby amended as follows:

1. <u>Incorporation of Recitals</u>. The recitals set forth above, the Lease referred to therein and the exhibits attached thereto are hereby incorporated herein by reference as if set forth in full in the body of this Amendment. Capitalized terms not otherwise defined herein shall have the meanings given to them in the Lease.

2. <u>Force Majeure Delay</u>. The following provision shall be added as Section 1.21 to the Lease.

"**Force Majeure Delay**" shall mean any actual delay due to strikes, lockouts or other labor or industrial disturbances (whether or not on the part of the employees of either party hereto); civil disturbance; war or terrorism; riot; embargo; inability to secure or delay in securing customary supplies, materials or labor through ordinary sources by reason of regulation or order of any government or regulatory body; lockdown orders or other regulations of any government authority, medical epidemics/pandemics to include COVID-19, lightning, earthquake, fire, storm, hurricane, tornado, flood, explosion or other "act of God"; or any other similar industry-wide or Building-wide causes beyond the reasonable control of the party from whom performance is required, or any of its contractors or other representatives; provided, however, that in no event shall Force Majeure Delay include strikes, walkouts or other labor disturbances in the event that the party to this Lease claiming the benefit of Force Majeure Delay, or any of its employees, agents or affiliates, materially contributed to or provoked such strike, lockout or other labor disturbance by violating a labor contract, collective bargaining agreement or any federal or state labor law or by creating or approving a lockout. Any prevention, delay or stoppage due to Force Majeure Delay shall excuse the performance of non-monetary obligations of the party affected for a period of time equal to any such prevention, delay or stoppage; provided, however, notwithstanding the foregoing, in no event shall Force Majeure Delay excuse the failure to timely pay Rent owing under this Lease, or the failure to timely obtain

1

insurance required under this Lease, or excuse or shorten the period of any delay caused by Tenant.

    3.    Phased Delivery. Notwithstanding anything in the Lease to the contrary, the Parties have agreed that Landlord shall have the option to deliver the Premises in phases (each a "**Phase**" and collectively, the "**Phases**"). There shall be a separate Delivery Date for each Phase. The Delivery Date for the first Phase may be referred to herein as the "**Initial Delivery Date**" and the Delivery Date for the final Phase may be referred to herein as the "**Final Delivery Date**".

    Each Phase shall consist of entire floor(s) of the Premises (i.e. no partial floors), including all Units and Beds located therein; provided however that all of the Exclusive Common Areas must be included and delivered in the first phase. Notwithstanding the foregoing delivery requirement, Landlord has agreed to provide Tenant early access rights in advance of Tenant's Pre-Commencement Period with respect to two model units, specifically Units 215 and 216 (and the ability to lock said model Units) as soon as practical so that Tenant may market them to prospective Customers. A schedule of the Beds and Community Space located on each floor of the Premises is attached hereto as **Exhibit A** and incorporated herein. Within ten (10) days following the Delivery Date for each Phase, Landlord and Tenant shall enter into a separate Certificate of Commencement as provided in Section 3.1(a) of the Lease.

    Each Phase shall be delivered in accordance with the notice requirements and delivery conditions outlined in Section 3.1(a) of the Lease; provided however that Landlord shall give Tenant a notice specifying the date upon which Landlord anticipates the Delivery Date for the specific Phase(s) will be delivered, including a description of such Phase, no later than sixty (60) calendar days prior to the actual Delivery Date for each Phase. All On each Delivery Date, at Landlord's sole cost and expense, Landlord shall deliver to Tenant the applicable portion of the Premises to be delivered to Tenant on such Delivery Date, Substantially Complete (as defined in and in accordance with Attachment 1 of Exhibit B attached to the Lease) and in accordance with the delivery conditions outlined in Lease, including but not limited to Section 3.1(a) of the Lease. Landlord be allowed to deliver all phases except for the final phase with a temporary certificate of occupancy. The entire Premises shall be delivered on or before the Final Delivery Date with the final Certificate of Occupancy for the Premises. For clarity, if Landlord chooses not to deliver the Premises in phases and instead delivers the entire Premises to Tenant, then the date that Landlord actually delivers the entire Premises with the final Certificate of Occupancy shall be the Delivery Date and also the "Initial Delivery Date" and "Final Delivery Date" as applicable in order to calculate time periods as set forth herein.

    4.    Lease Year. The first sentence in Section 1.7 of the Lease shall be deleted in its entirety and replaced with the following:

> "The first "Lease Year" shall commence on the Initial Delivery Date, and end either (i) if the Initial Delivery Date is the first day of a month, twelve (12) full calendar months after the Initial Delivery Date, or (ii), if the Initial Delivery Date is a day other than the first day of a month, the last day of the twelfth (12th) full calendar month after the Initial Delivery Date."

    5.    Outside Delivery Date. Due to the current COVID-19 pandemic and the fact that all construction sites in Philadelphia have been closed pursuant to the Order, Landlord and Tenant have agreed to revise the definition of term "**Outside Delivery Date**" as defined in Section 2.3 of the Lease to coincide with the date that construction is fully permitted in the City of Philadelphia, which is hereby defined as the date in which Philadelphia's Department of Licenses & Inspections is accepting requests for and performing building inspections. Effective as of the Effective Date of this Amendment Section 2.3 of the Lease shall be deleted in its entirety and replaced with the following:

> "Notwithstanding anything to the contrary contained herein, in the event that the Final Delivery Date has not occurred on or before the date that is six (6) months following the date in which the City of Philadelphia's Department of Licenses & Inspections is accepting requests for and performing building inspections (the "**Outside Delivery Date**"), then tenant may, at any time before the Final Delivery Date, elect either of the following rights: (i) give Landlord a written notice of termination of this Lease, in which event, within five (5) Business Days after Landlord's receipt of such termination notice, Landlord shall reimburse Tenant for any advance rent and deposits paid by Tenant, including, to the extent delivered to Landlord, the Security Deposit, together with any and all costs incurred by Tenant in connection with this Lease, including, without limitation, expenses of Tenant for legal fees, architectural fees and the cost of Tenant's Personal Property purchased for the Premises, as documented to Landlord showing reasonable detail and back-up (less the amount of the

2

Tenant's Personal Property Allowance, if any, theretofore received by Tenant), and upon such payment and return, both parties shall be relieved of all obligations under this Lease; or (ii) receive one and a half (1.5) days of Base Rent and Additional Rent abatement (in an amount equal to the applicable rent rate for periods following any rent abatement) with respect to those Beds that have not been delivered, for each day of delay that the Final Delivery Date extends beyond the Outside Delivery Date."

6. December. Notwithstanding anything in the Lease to the contrary, Tenant may, but shall not be obligated to, accept possession of the Premises, or any Phase thereof, during the month of December. Furthermore, if Tenant accepts delivery of any portion of the Premises in the month of December, in no event shall the time period used for calculating the Commencement Date for such Phase begin to accrue during the month of December for any calendar year. Any refusal to accept possession will not be considered in the timing calculation for the Outside Delivery Date or tenant's right to terminate.

7. Rent Commencement. The parties agree that the Rent Commencement Date, applies to each Phase so delivered and shall be revised to one (1) month following the Commencement Date for each Phase. Therefore, effective as of the Effective Date of this Amendment Section 1.6 of the Lease shall be deleted in its entirety and replaced with the following:

"**Rent Commencement Date**: The date which is one (1) months following the Commencement Date for each Phase, provided that the Rent Commencement Date shall be extended as follows: (i) the Rent Commencement Date for each Phase shall be extended one day for each day by which Tenant's Pre-Commencement Period (as defined below) for such Phase is less than forty-five (45) days."

8. Base Rent. Notwithstanding anything in the Lease to the contrary, effective as of the Effective Date of this Amendment the Base Rent for Lease Years 1 and 2 as set forth in Exhibit E-1 of the Lease shall be deleted in its entirety and replaced with the following:

a. Base Rent First Lease Year: commencing on the Rent Commencement Date for each Phase, through and including the First Lease Year, Tenant shall pay Monthly Base Rent to Landlord in an amount equal to the Monthly Base Rent Per Bed rate below multiplied by the total number of Bedrooms delivered to Tenant on the applicable Delivery Date, on a monthly basis. It is the intention that the rent for each Phase be tiered as set forth in the below chart. From and after the Final Delivery Date Base Rent for the first Lease Year shall be calculated based on the Monthly Base Rent amounts in the below chart.

| Lease Year 1 (for each Phase) | Monthly Base Rent | Monthly Base Rent Per Bed |
|---|---|---|
| Delivery Date – Month 1 | $0 | $0 |
| Month 2 (the Rent Commencement Date) | $34,375 | $185 |
| Month 3 | $68,750 | $370 |
| Month 4 – end of first Lease Year | $95,486 | $513 |

The Base Rent for each of the second (2nd) through, and including, the tenth (10th) Lease Years shall be as set forth on Exhibit E-1 of the Lease.

9. FF&E Allowance. Notwithstanding anything in Section 29 of the Lease to the contrary, Tenant shall be allowed to utilize up to One Hundred Thousand and 00/100 Dollars ($100,000) of the FF&E Allowance towards millwork and interior painting of the Premises ("**Tenant Interior Work**") and Tenant shall be allowed to complete such Tenant Interior Work during its Pre-Commencement Period provided it does not interfere with or delay the completion

3

OMC\4835-5654-5208-3/31/20

of Landlord's Work. In the event that the Tenant Interior Work prevents or delays Landlord's ability to obtain a temporary or final certificate of occupancy, then the Delivery Date for such Phase shall be recalculated to take into account such delay one day for each day so delayed.

10.   Security Deposit/Lease Security Bond. Tenant has deposited with Landlord a Letter of Credit in the amount of Five Hundred Fifty Thousand ($550,000.00) Dollars as security for the performance by Tenant of all of Tenant's obligations, covenants, conditions and agreements under the Lease. Tenant wishes to replace the Letter of Credit with a lease surety bond. Upon Tenant causing the delivery to Landlord of an irrevocable and unconditional standby lease surety bond in the face amount of Five Hundred Fifty Thousand ($550,000.00) Dollars, in form and substance substantially similar to the form attached here as Exhibit B by Swiss RE or a surety bond provider acceptable to Landlord ("**Surety Bond**"), the original Letter of Credit, along with a written confirmation of release thereof and any other certifications required by the issuer of said Letter of Credit, shall be returned to Tenant within five (5) business days from Landlord's receipt of the Surety Bond. Notwithstanding anything in Section 9 of the Lease to the contrary, in the event Landlord draws upon the Security Deposit as set forth in this Article 9, then within ten (10) Business Days after Landlord gives written notice to Tenant of such use or application, Tenant shall either (a) replace such Surety Bond with a replacement Surety Bond in the amount of the Security Deposit, and simultaneously Landlord shall return to Tenant the Surety Bond being replaced along with a written confirmation of release thereof and any other certifications required by the issuer of said Surety Bond, or (b) amend the then existing Surety Bond to reflect the amount the Security Deposit as then required under the terms of this Lease.

Landlord agrees to transfer the Surety Bond to any transferee of the Building or Landlord's interest therein, whereupon such transferee shall be liable for the return of the Security Deposit, and Landlord shall be released from all liability for the return thereof. Subject to the terms of the Bankruptcy Code, in the event of bankruptcy or other debtor-creditor proceedings against Tenant, the Surety Bond will be deemed to be applied first to the payment of Rent for all periods prior to any filings of such proceedings.

11.   Brokerage Commission. Each of Landlord and Tenant represents and warrants to the other that it has not dealt, and will not deal, with any real estate broker or sales representative in connection with this proposed transaction. Each party agrees to indemnify, defend and hold harmless the other and the other's directors, officers and employees from and against all threatened or asserted claims, liabilities, costs and damages (including reasonable attorney's fees and disbursements) which may occur as a result of a breach of this representation by the indemnifying party.

12.   Notice. Effective as of the Effective Date of this Amendment, Tenant's notice address shall be updated and shall hereafter be as set forth below:

If to Tenant:

        Medici 1150 N. American Street LLC
        c/o Quarters
        215 Park Avenue South, 11th Floor
        New York, NY 10003
        Attention: Lori Albert, Johannes Huhn, and Ferdinand vonFumetti
        Email: lori.albert@quarters.com, US_Legal@quarters.com, and ferdinand.vonfumetti@medici-living.de

With a copy to:

        Akerman LLP
        666 Fifth Avenue
        New York, NY 10103
        Attention: Joshua Rinesmith, Esq.
        Email: joshua.rinesmith@akerman.com

13.   Miscellaneous.

(a) <u>Counterparts</u>. This Amendment may be executed in identical counterparts, all of which, taken together, shall constitute one and the same agreement. Electronic signatures, including, without limitation, signatures conveyed via email or telecopier, shall be deemed to be originals for all purposes.

(c) <u>Binding Effect</u>. This Amendment shall be binding on, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.

(d) <u>Full Force and Effect</u>. The provisions of this Amendment modify and form a part of the Lease. As amended hereby, the Lease continues in full force and effect. In the event of any conflict or inconsistency between the terms of this Amendment and the remaining terms of the Lease, the terms of this Amendment shall govern and control. Time is of the essence of this Amendment and the Lease.

*(Signature Page Follows)*

IN WITNESS WHEREOF, Landlord and Tenant have duly executed this Amendment on the date first above written.

LANDLORD:

**B.S. INGERSOLL, LLC,**
a Pennsylvania limited liability company

By: _____[DocuSigned: 21CEFC9F450948B]_____
Name: Dana Spain
Title: Managing Member

TENANT:
**MEDICI 1150 N. American Street LLC,**
a Delaware limited liability company

By: QUARTERS Properties USA, Inc.,
a Delaware corporation, its Manager

By: _____
Name: Bobby Condon
Title: Executive Vice President

AND

By: _____
Name:    Barbara Albert
Title:     Secretary

Confirmed by Guarantor:

**Quarters Holding GmbH**
By: _____[DocuSigned: F. v. Fumetti / B70B8BB0B0C64F0]_____
Name: F. V. Fumetti
Title: CFO & Managing Director

And:
By: _____[DocuSigned: Lukas Gittinger / EE3773EE3E5E402]_____
Name: Lukas Gittinger
Title: Head of Finance & Authorized Signatory

6

OMC\4835-5654-5208-3/31/20

IN WITNESS WHEREOF, Landlord and Tenant have duly executed this Amendment on the date first above written.

LANDLORD:

**B.S. INGERSOLL, LLC,**
a Pennsylvania limited liability company

By: _____
Name: Dana Spain
Title: Managing Member

TENANT:
**MEDICI 1150 N. American Street LLC,**
a Delaware limited liability company

By: QUARTERS Properties USA, Inc.,
a Delaware corporation, its Manager

By: _____
Name: Bobby Condon
Title: Executive Vice President

AND

By: _____
Name: _____Barbara Albert_____
Title: _____Secretary_____

Confirmed by Guarantor:

**Quarters Holding GmbH**

By: _____
Name: _____
Title: _____

And:

By: _____
Name: _____
Title: _____

# Exhibit A

## SCHEDULE OF FLOORS IN PREMISES

### QUARTERS Philly, 1150 N American

#### 1150 N AMERICAN

| Levels | # Units | # Beds | Community Space | Unit A (left) 2 beds | Unit B (right) 2 beds | Unit C (14'-6") 4 beds | Unit D (12'-0") 2 beds | Unit E (14'-0") 4 beds | Unit F (14'-6") 4 beds TYPE A | Unit G (12'-0") 2 beds | Unit H (14'-6") 2 beds | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| # Beds | | | | 2 | 2 | 4 | 2 | 4 | 4 | 2 | 2 | | |
| Basement | 0 | | | | | | | | | | | | |
| Groundfloor | 0 | | 1 | | | | | | | | | | |
| 2 | 16 | 40 | | 1 | 1 | 1 | 4 | 2 | 1 | 4 | 2 | | |
| 3 | 16 | 40 | | 1 | 1 | 1 | 4 | 2 | 1 | 4 | 2 | | |
| 4 | 16 | 40 | | 1 | 1 | 1 | 4 | 2 | 1 | 4 | 2 | | |
| 5 | 16 | 40 | | 1 | 1 | 1 | 4 | 2 | 1 | 4 | 2 | | |
| 6 | 10 | 26 | 1 | 1 | 1 | | | 2 | 1 | 4 | 1 | | |
| Total Rooms | | 186 | | 10 | 10 | 16 | 32 | 40 | 20 | 40 | 18 | Total Rooms | 186 |

OMC\4835-5654-5208-3/31/20

## Exhibit B

## FORM OF LEASE BOND

LEASE BOND

KNOW ALL BY THESE PRESENTS **Bond**

That we, _____ as principal, and _____
_____ , a corporation duly organized and
existing under and by the virtue of laws of the State of _____ , as Surety, are held and
firmly bound unto, _____ in
the sum of _____ Dollars
($_____), lawful money of the United States of America, to be paid to _____
_____ for which payment well and truly to be
made, we bind ourselves, our heirs, executors, jointly and severally, firmly by these presents.

WHEREAS, the said Principal has entered into a Lease Agreement, dated _____ ,
with the _____ , for the use of the
premises, as described in the articles of the said Lease Agreement.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the Principal shall faithfully make all payments required under said Lease Agreement, (which by reference is made a part hereof), then this obligation shall be null and void, otherwise to remain in full force and effect.

PROVIDED, HOWEVER, THAT THIS BOND IS EXECUTED BY THE PRINCIPAL AND SURETY AND ACCEPTED BY THE OBLIGEE SUBJECT TO THE FOLLOWING EXPRESS CONDITIONS:

1. The term of the bond shall be from _____ to _____ , subject to continuation by an annual extension certificate.

2. The liability of the Surety shall in no event exceed, _____
_____ DOLLARS, in the aggregate, the penal sum of the bond.

3. No assignment shall be effective without the written consent of the Surety.

4. All suits, actions against this bond must be brought within 30 days of the termination of the Lease or bond whichever shall occur first.

5. It is understood and agreed that the obligation of the Surety may be terminated by the Surety by giving ninety (90) days advance notice in writing to the Obligee.

SIGNED, SEALED, AND DATED THIS _____ day of _____ , _____.

8

OMC\4835-5654-5208-3/31/20

```
                                        _____
                                                             (Principal)
                                   BY:_____


                                        _____
                                                               (Surety)
                                   BY:_____
                                                      , Attorney-in-Fact
```