IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| B.S. INGERSOLL, LLC | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GREAT AMERICAN INSURANCE CO. | : | NO.  22-771 |

## MEMORANDUM

**Padova, J.**                                                    **November 13, 2023**

Plaintiff B.S. Ingersoll, LLC ("Ingersoll") has filed this action seeking a declaration that Defendant Great American Insurance Company ("GAIC") is obligated to pay Plaintiff under the terms of a Lease Bond issued by GAIC that secured a lease entered into between Plaintiff and Medici 1150 N. American Street LLC ("Medici").  Ingersoll also asserts claims against GAIC for breach of contract and bad faith.  GAIC has filed a Motion to Dismiss the First Amended Complaint on the ground that Plaintiff failed to file suit within the limitations period provided in the Lease Bond (the "Lease Bond Limitations Period").  We held a Hearing on the Motion on September 28, 2023.  For the reasons that follow, we deny the Motion.

## I.      PROCEDURAL AND FACTUAL BACKGROUND

### A.      Procedural Background

GAIC moved to dismiss the initial Complaint in this case on the ground that Ingersoll failed to file the instant lawsuit within the Lease Bond Limitations Period.  (See March 7, 2023 Mem. (Docket No. 12) at 3.)  In our Memorandum analyzing GAIC's prior Motion to Dismiss, we noted that the Lease Bond Limitations Period provides that "'[n]o action, suit or proceeding either at law or in equity shall be maintained against the Surety unless such action, suit or proceeding is commenced within three (3) months after the termination of this bond.'"  (Id. at 4 (quoting Compl. Ex. C ¶ 3).)  We further noted that Paragraph 6 of the Lease Bond provides that "[t]his Bond

expires on 7/16/2021" and that Ingersoll did not commence the instant lawsuit until March 2, 2022, more than seven months after the Lease Bond expired by its own terms.  (Id. (quoting Compl. Ex. C ¶ 6).)  Among its arguments in opposition to the Motion to Dismiss the original Complaint, Ingersoll asserted that GAIC had waived the Lease Bond Limitations Period.  (Id. at 19.)  Ingersoll asked us to consider evidence outside of the Complaint that it believed supported that argument.  (Id. at 20.)  We declined to exercise our discretion to consider these outside materials because the parties had not yet conducted discovery in this case.  (Id. at 20-21.)  Consequently, while we granted the Motion to Dismiss Ingersoll's initial Complaint, we did so without prejudice and allowed Ingersoll to file an amended complaint including any facts that it believes should be considered with respect to its position that GAIC waived the Lease Bond Limitations Period.

     B.    <u>Factual Allegations</u>

The First Amended Complaint, together with its Exhibits, alleges the following facts.  On November 12, 2018, Ingersoll entered into a lease agreement (the "Lease Agreement") with Medici for the residential real property located at 1150-1156 North American Street in Philadelphia (the "Property").  (1st Am. Compl. ¶ 7; Ex. A.)  The Lease Agreement required Medici to provide Ingersoll with a security deposit of $550,000 in cash or a letter of credit "as 'security for the performance by [Medici] of all of [Medici's] obligations, covenants, conditions and agreements under [the] Lease.'"  (Id. ¶¶ 8, 10 (quoting Ex. A ¶ 9.1).)  Medici provided the deposit via a letter of credit.  (Id. ¶ 9.)  On May 20, 2020, Medici and Ingersoll amended the Lease Agreement to permit Medici to replace the letter of credit security deposit with a lease bond (the "Lease Amendment").  (Id. ¶ 12; Ex. B.)  On July 16, 2020, Medici caused GAIC, the Surety, to issue the Lease Bond payable only to Ingersoll, the Obligee, in an amount up to $550,000.00 (the "Coverage

Amount") as a security deposit to insure Medici's performance of its obligations under the Lease Agreement. (Id. ¶ 15; Ex. C.)

The Lease Bond replaced the letter of credit as Medici's security deposit. (Id. ¶ 16.) The Lease Bond provides that "'[i]n the event of any default of [Medici] . . . , [GAIC] shall be given written notice by [Ingersoll] expressly declaring [Medici's] default within thirty days after such default by certified mailed [sic] to [GAIC] . . . .'" (Id. ¶ 17 (alterations in original) (quoting Ex. C ¶ 2).) The Lease Bond includes the Lease Bond Limitations Period, which, as we noted above, provides that "'[n]o action[,] suit or proceeding either at law or in equity shall be maintained against [GAIC] unless such action, suit or proceeding is commenced within three (3) months after the termination of this bond.'" (Id. ¶ 18 (third alteration in original) (quoting Ex. C ¶ 3).) The Lease Bond further provides that it would "expire[] on 7/16/2021 and [was] subject to annual renewal . . . 'to guarantee the bond obligations set forth in the Lease Agreement.'" (Id. ¶ 19 (emphasis omitted) (quoting Ex. C ¶ 6).) Pursuant to the Lease Agreement, the Lease Bond would be available to Ingersoll for the payment of any amount that Ingersoll had expended or become obligated to spend, or to compensate Ingersoll for any losses that it incurred in the event that Medici defaulted on its obligations under the Lease Agreement. (Id. ¶ 20 (citing Ex. A at § 9.2).)

On January 14, 2021, Medici defaulted on its obligations under the Lease Agreement by filing a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. (Id. ¶ 24.) The Chapter 7 Trustee rejected the Lease Agreement "because there was no value in the Lease Agreement for the bankruptcy estate." (Id. ¶ 25.) The Chapter 7 Trustee also "consented to Ingersoll collecting on the Lease Bond to recover for damages suffered as a consequence of Medici's breach" of the Lease Agreement. (Id. ¶ 26.) "The Lease Agreement was in in full force and effect at the time of

Medici's breach." (Id. ¶ 33.) As a result of Medici's default, Ingersoll suffered damages in excess of the Coverage Amount, including "costs of reletting the Property, removal of items specifically installed for Medici," and outfitting the property for other tenants, as well as Medici's change orders in excess of $150,000, rent due from Medici to Ingersoll, and marketing expenses. (Id. ¶ 32.)

On February 11, 2021, Ingersoll provided timely notice to "GAIC of Medici's default under the Lease Agreement . . . and made a claim on the Lease Bond" (the "Notice"). (Id. ¶ 34; Ex. D.) GAIC responded to the Notice on June 17, 2021 by asking Ingersoll for additional information about the claim, specifically "'whether delivery [of the Property] took place as defined in the original Lease Agreement or if the rent commencement date . . . ever occurred.'" (Id. ¶¶ 35-36 (quoting Ex. E at 1).) In its June 17, 2021 letter, GAIC expressed its position that "'[i]f there was no delivery prior to the filing of the petition, the lease never commenced and there can be no damages related to a default by Medici.'" (Id. ¶ 36 (quoting Ex. E at 1).) However, the June 17, 2021 letter also states that if Ingersoll has "additional information to show that there is a basis for a claim against the bonds [sic] for rent due for units delivered to Medici, [GAIC] will naturally review that information and consider your client's claim." (Id.) GAIC concluded the letter by making a request for "any additional information that [Ingersoll] believes supports a claim against the bond" and the statement that "GAIC reserves all of its rights." (Id. at 2.)

Counsel for Ingersoll responded to the June 17, 2021 letter on July 26, 2021. (1st Am. Compl. Ex. F.) In this letter, counsel for Ingersoll expressed his understanding that GAIC was likely to deny Ingersoll's claim if Ingersoll could not show that the lease had commenced. (Id. at 1.) The July 26, 2021 letter also sets out, at length, Ingersoll's position that GAIC fundamentally

misunderstood the requirements of the Lease Agreement, the Lease Amendment, and the Lease Bond.  (Id. at 1-3.)

GAIC responded to Ingersoll's July 26, 2021 letter on August 9, 2021. (lst Am. Compl. Ex. G.)  In the August 9, 2021 letter, GAIC states its disagreement with Ingersoll's position that a "Commencement Event" was not required to trigger GAIC's obligations under the Lease Bond and restates GAIC's belief that the lease "starts with delivery."  (Id. at 1.)  The letter further states that GAIC expected Ingersoll to provide it with documents that would show that the Property was delivered to Medici, so that the amount of rent due from Medici could be calculated based on the number of units that had been delivered by Ingersoll.  (Id. at 2.)  The Letter also states that GAIC would consider any additional information provided by Ingersoll and that GAIC reserved all of its rights and defenses.  (Id.)

Ingersoll responded to the August 9, 2021 letter on October 28, 2021.  (1st Am. Compl. Ex. H.)  In this letter, Ingersoll repeats its position that GAIC's "focus on whether [the Property] was delivered to the tenant [Medici] is misplaced" and contended that nothing in the Lease Bond, the Lease Agreement, or the Lease Amendment "limits the reasons Ingersoll may make a claim against the Bond."  (Id. at 1.)  Ingersoll also states in this letter that it delivered the Property to Medici on November 23, 2020, which was prior to Medici's Chapter 7 filing.  (Id. at 3; lst Am. Compl. ¶ 24.)

GAIC responded to Ingersoll's October 28, 2021 letter through an email sent on December 3, 2021.  (1st Am. Compl. Ex. I.)  In this email, sent after the expiration of the Lease Bond Limitations Period, GAIC states that "Great American is still investigating the claim of Ingersoll." (Id. at 1.)  The email also states that GAIC had requested certificates of occupancy for the Property from the City of Philadelphia and asks Ingersoll to provide copies of the certificates of occupancy

because the certificates of occupancy would enable GAIC to "determine whether the units were deliverable to Medici within the required time frame."  (Id.)  The email further states that "Great American reserves its right [sic] while investigating this claim."  (Id.)

GAIC denied Ingersoll's claim for coverage under the Lease Bond by letter dated February 8, 2022.  (lst Am. Compl. Ex. J.)  GAIC states in its February 8, 2022 letter that it denied Ingersoll's claim on the Lease Bond for the following reason:  "[t]he lease that was secured by the bond commenced with delivery, which required a certificate of occupancy for the leased properties. Insofar as we are unable to confirm that the lease secured by the Great American bond ever commenced, we are denying B.S. Ingersoll's claim and closing the file."  (Id.)  The February 8, 2022 letter did not mention the Lease Bond Limitations Period as the reason why GAIC denied Ingersoll's claim on the Lease Bond.

Ingersoll filed this lawsuit against GAIC on March 2, 2022, more than seven months after the Lease Bond expired on July 16, 2021 and more than four months after the expiration of the Lease Bond Limitations Period.  (See id. Ex. C ¶¶ 3, 6.)  Ingersoll did not bring suit earlier solely because GAIC did not deny coverage under the Lease Bond until February 8, 2022 and suggested, prior to that date, that it would provide coverage if Ingersoll provided it with additional information.  (Id. ¶ 52.)  GAIC could have denied coverage prior to February 2022 based on the Lease Bond Limitations Period but did not do so.  (Id. ¶ 53.)  Ingersoll has suffered damages "in excess of the Coverage Amount, including . . . costs of reletting the Property, removal of items specifically installed for Medici, outfitting for other tenants, marketing expenses, change orders totaling more than $150,000.00 requested by Medici, and rent due from Medici to Ingersoll."  (Id. ¶ 65.)

## II.    LEGAL STANDARD

GAIC moves to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Ingersoll failed to file the instant lawsuit within the Lease Bond Limitations Period.  "Generally, a statute of limitations defense cannot be raised under Rule 12 because it is not one of the enumerated defenses 'a party may assert . . . by motion' under the rule."  PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh, 19 F.4th 308, 318 n.13 (3d Cir. 2021) (alteration in original) (quoting Fed. R. Civ. P. 12(b)).  However, the United States Court of Appeals for the Third Circuit "permit[s] such a motion pursuant to Rule 12(b)(6) 'if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'"  Id. (quoting Fried v. JP Morgan Chase Co., 850 F.3d 590, 604 (3d Cir. 2017)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "'consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'"  Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).  "We accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff."  Shorter v. United States, 12 F.4th 366, 371 (3d Cir. 2021) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)).  However, we "need not 'accept as true a legal conclusion couched as a factual allegation.'"  Host Int'l, Inc. v. Marketplace PHL, LLC, 32 F.4th 242, 248 (3d Cir. 2022) (quoting Papasan v. Alain, 478 U.S. 265, 286 (1986)) (add'l citation omitted).

A plaintiff's pleading obligation is to set forth "'a short and plain statement of the claim,'" which "'give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it

rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (second alteration in original) (first quoting Fed. R. Civ. P. 8(a)(2); and then quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  The complaint must allege "'sufficient factual matter to show that the claim is facially plausible, thus enabling the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" <u>Bibbs v. Trans Union LLC</u>, 43 F.4th 331, 339 (3d Cir. 2022) (alteration in original) (quoting <u>Warren Gen. Hosp.</u>, 643 F.3d at 84).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 556).  In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" <u>Geness v. Admin. Off. of Pa. Cts.</u>, 974 F.3d 263, 269 (3d Cir. 2020) (quoting <u>Twombly</u>, 550 U.S. at 555).

## III.   DISCUSSION

We granted GAIC's Motion to Dismiss the original Complaint because GAIC's statute of limitations defense was "'apparent on the face of the complaint and documents relied on in the complaint.'" (March 7, 2023 Mem. at 21 (quoting <u>Lupian v. Joseph Cory Holdings LLC</u>, 905 F.3d 127, 130 (3d Cir. 2018).)  As we mentioned above, we allowed Ingersoll to file "an amended complaint that includes any facts that it believes should be considered with respect to its position that GAIC waived the Lease Bond Limitations Period."  (<u>Id.</u>)  GAIC has now moved to dismiss the First Amended Complaint based on the Lease Bond Limitations Period.  Ingersoll opposes the Motion on the ground that the First Amended Complaint plausibly alleges that GAIC waived the Lease Bond Limitations Period.

"'Waiver is the voluntary and intentional abandonment or relinquishment of a known right.'" <u>Davis v. Safeco Ins. Co. of Illinois</u>, Civ. A. No. 19-3871, 2021 WL 3603037, at *3 (E.D. Pa. Aug. 13, 2021) (quoting <u>Prime Medica Assocs. v. Valley Forge Ins. Co.</u>, 970 A.2d 1149, 1156 (Pa. Super. Ct. 2009)).  Thus, "[a] limitation or condition in a policy of insurance, intended for the benefit of the corporation, may be waived by it; and the fact of waiver is a question for the jury." <u>Bonnert v. Pennsylvania Ins. Co.</u>, 18 A. 552, 552 (Pa. 1889) (citation omitted).

Under Pennsylvania law, "contractual limitations on the time to commence suit," such as the Lease Bond Limitations Period, are generally considered to be valid and enforceable "where the specified time within which suit was to be brought [is] not unreasonable." <u>Commonwealth v. TransAmerica Ins. Co.</u>, 341 A.2d 74, 77 (Pa. 1975) (citations omitted).  "However, a provision of this nature may be extended or waived where the actions of the insurer lead[] the insured to believe the limitation period will not be relied upon." <u>Id.</u> (citations omitted).  Consequently, "'[i]f in the course of the negotiations the company gave the plaintiff reasonable grounds for believing that the time limit would be extended or that such provision would not be strictly enforced, it could not subsequently insist on its strict enforcement without giving him a reasonable time thereafter to bring his action.'" <u>Id.</u> (quoting <u>McMeekin v. Prudential Ins. Co.</u>, 36 A.2d 430, 432 (Pa. 1944)).  Such a "waiver need not be expressed but 'may be inferred from the acts of the insurers evidencing a recognition of liability, or even from their denial of obligation exclusively for other reasons.'" <u>Id.</u> (quoting <u>McMeekin</u>, 36 A.2d at 432).  Indeed, the Pennsylvania Supreme Court has determined that "any act which tends to mislead the plaintiff, while parties are dealing on friendly terms, to avoid litigation, will be held to be evidence of a waiver of such limitation.'" <u>Id.</u> at 78 (quoting <u>Howard Ins. Co. v. Hocking</u>, 18 A. 614, 615 (Pa. 1889)).  The Pennsylvania Supreme Court held in <u>Transamerica Ins. Co.</u> "that the time for suit provision in the contract was waived because the

actions of [the insurer] led the [insured] to believe that the limitation period had been waived." Davis, 2021 WL 3603037, at *3 (citing Transamerica Ins. Co., 341 A.2d at 76-77). "In Transamerica, the insurer did not expressly waive enforcement of the suit limitation period clause, but in continuing their investigation beyond the time period, reasonably conveyed to the insured that the limitation clause wouldn't be strictly enforced." Id. Thus, if a "[company] acted and promised, after the action was legally barred, as if it did not intend to insist on the limitation, and put the party to trouble, expense, and anxiety in regard to his claim, they need not complain of a jury finding that they did waive it." Bonnert, 18 A. at 552 (alteration in original) (quotation omitted).

Ingersoll argues that the First Amended Complaint plausibly alleges that GAIC's  actions and the representations that it made to Ingersoll between February 2021 and February 2022 waived the Lease Bond Limitations Period.  GAIC contends that the First Amended Complaint fails to plausibly allege that it waived the Lease Bond Limitations Period.[1]  Specifically, GAIC maintains that the correspondence between the parties that is attached as Exhibits to the First Amended

---

[1] GAIC also maintains that we cannot rely on the allegations of the First Amended Complaint that describe the communications between GAIC and Ingersoll because those allegations are contradicted by the actual correspondence between the parties, which is attached as exhibits to the Complaint.  Specifically, GAIC argues that the allegations of the First Amended Complaint omit those portions of its correspondence in which it consistently reserved all of its rights under the terms of the Lease Bond and in which it notified Ingersoll, before the termination of the Lease Bond Limitations Period, that it would most likely deny Ingersoll's claim against the Lease Bond.  The United States Court of Appeals for the Third Circuit has explained that where the exhibits to a complaint "contradict [the] allegations in the complaint, the exhibits control." Vorchheimer v. Philadelphian Owners Ass'n, 903 F.3d 100, 112 (3d Cir. 2018) (citing Abcarian v. McDonald, 617 F.3d 931, 933 (7th Cir. 2010); Schuylkill Energy Res., Inc. v. Pa. Power & Light Co., 113 F.3d 405, 417 (3d Cir. 1997)).  Accordingly, since all of this correspondence has been attached to the First Amended Complaint, and because we may consider the exhibits attached to that complaint in our analysis of GAIC's Motion to Dismiss, see Alpizar-Fallas, 908 F.3d at 914, our analysis of Ingersoll's waiver argument includes consideration of the Exhibits, and focuses on the actual content of the parties' correspondence, not the manner in which the First Amended Complaint characterizes that correspondence.

Complaint shows that GAIC reserved all of its rights under the Lease Bond and that Ingersoll was aware, before the Lease Bond Limitations Period expired, that GAIC was likely to deny Ingersoll's claim and was thus in a position to file suit prior to the expiration of the Lease Bond Limitations Period.

As an initial matter, the First Amended Complaint does not allege that GAIC expressly waived enforcement of the Lease Bond Limitations Period. However, as we discussed above, the Pennsylvania Supreme Court has stated that "waiver need not be expressed, but may be inferred from the acts of the insurers evidencing a recognition of liability, . . . or from their denial of obligation exclusively for other reasons" or "actions [that] lead[] the insured to believe that the limitation period will not be relied upon." Transamerica, 341 A.2d at 77 (quotation omitted). Consequently, the issue before us is whether the First Amended Complain plausibly alleges that GAIC, in the course of its correspondence with Ingersoll, (1) led Ingersoll to believe that it would not rely on the Lease Bond Limitations Period, (2) recognized its liability, or (3) denied Ingersoll's claim for other reasons. Id. (quotations omitted). In making this determination, we consider the allegations of the Amended Complaint, along with the correspondence between Ingersoll and GAIC, attached as Exhibits E through J to the First Amended Complaint, in the light most favorable to Ingersoll. See Shorter, 12 F.4th at 371.

As we discussed above, the First Amended Complaint clearly alleges, and the attached correspondence fully corroborates, that Ingersoll submitted a timely claim to GAIC and that GAIC suggested that it would deny that claim if Ingersoll could not provide it with documentation that the lease had commenced through the delivery of the Property to Medici before Medici's Chapter 7 filing. (See 1st Am. Compl. ¶¶ 34-36; Ex. D-E.) The First Amended Complaint further alleges, and the attached correspondence corroborates, that until February 8, 2022, the parties continued to

discuss, through telephone calls and written correspondence, whether this was a valid basis for GAIC to deny Ingersoll's claim.  (Id. ¶¶ 37-43; Exs. F-J.)  Moreover, GAIC sent an email to Ingersoll on December 10, 2021, after the expiration of the Lease Bond Limitations Period, stating that it was still investigating Ingersoll's claim and asking Ingersoll to provide more documentation in support of its position that the Property had been delivered to Medici within the requisite time period.  (Id. ¶ 42; Ex. I.)  Finally, the First Amended Complaint alleges, and the attached correspondence corroborates that GAIC denied Ingersoll's claim for coverage under the Lease Bond in a letter dated February 8, 2022 and this letter did not mention the Lease Bond Limitations Period as a basis for denying Ingersoll's claim.  (Id. ¶¶ 43-44; Ex. J.)  Based on these allegations, as more fully described above, the Complaint and its Exhibits plausibly allege that GAIC led Ingersoll to believe that it would not rely on the Lease Bond Limitations Period and that GAIC denied Ingersoll's claim for other reasons, both scenarios that support Ingersoll's assertion that GAIC waived the Lease Bond Limitations Period.  See TransAmerica Ins. Co., 341 A.2d at 77 (quotations omitted).

GAIC nevertheless relies on the Exhibits to the First Amended Complaint, which show that it consistently stated in its correspondence with Ingersoll that it was likely to deny Ingersoll's claim if Ingersoll did not provide it with documentation that the lease had commenced with delivery of the Property to Medici prior to Medici's Chapter 7 filing.  (See 1st Am. Compl. Exs. E, G, I, J.) GAIC argues that this correspondence makes clear that Ingersoll was aware that it was likely to deny Ingersoll's claim on the Lease Bond so that Ingersoll could have instituted this action prior to the expiration of the Lease Bond Limitations Period.  However, the Exhibits also show that GAIC did not actually deny Ingersoll's claim until February 8, 2022.  (Id. Ex. J.)  The Exhibits further show that GAIC repeatedly informed Ingersoll that it would consider whatever information

Ingersoll provided it regarding whether it delivered the Property to Medici and that, on October 28, 2021, before GAIC denied Ingersoll's claim, Ingersoll provided GAIC with documentation regarding its delivery of the Property prior to Medici's Chapter 7 filing.  (See id. Exs. E, G, H.) In addition, Exhibit I shows that GAIC informed Ingersoll on December 3, 2021, after the Lease Bond Limitations Period had expired, that it was continuing its investigation of Ingersoll's claim. (Id. Ex. I.)  We thus conclude that, even accepting GAIC's assertion that Ingersoll could have filed this action before the lease Bond Limitations Period expired, the First Amended Complaint and its Exhibits plausibly allege that GAIC "gave [Ingersoll] reasonable ground for believing that the time limit would be extended or that such provision would not be strictly enforced."  Transamerica Ins. Co., 341 A.2d at 77.  Indeed, as explained above, the First Amended Complaint, together with its Exhibits, plausibly alleges that GAIC acknowledged its potential liability if Ingersoll was able to provide adequate documentation, that Ingersoll provided certain documentation, and that GAIC eventually denied Ingersoll's claim on a basis wholly unrelated to the Lease Bond Limitations Period.  (See lst Am. Compl. Exs. E, G, I, J.)  Accordingly, we find the fact that Ingersoll could have filed this action earlier to be irrelevant to our waiver analysis.

GAIC also argues that we should find that the First Amended Complaint does not plausibly allege waiver because the Exhibits make clear that it consistently reserved all of its rights under the Lease Bond.  We do not discount that GAIC repeatedly stated in its correspondence with Ingersoll that it was reserving its rights, but we must also view this standard reservation of rights language in its full context.  Considering the totality of the parties' correspondence, which included GAIC's singular focus on the date on which Ingersoll delivered the Property to GAIC and its failure to cite the Lease Bond Limitations Period as the reason for denial after that limitations period had expired, and viewing the correspondence in the light most favorable to Ingersoll, we

do not find that GAIC's reservation of rights is determinative at this stage of the proceedings. To the contrary, even considering GAIC's reservation of rights, we conclude, for the above stated reasons, that the allegations of the First Amended Complaint together with its Exhibits plausibly alleges that GAIC

waived the Lease Bond Limitations Period.[2]

## IV.     CONCLUSION

For the reasons stated above, we deny the Motion to Dismiss the First Amended Complaint. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova

_____
John R. Padova, J.

---

[2] Since we deny the Motion to Dismiss on this basis, we need not consider Ingersoll's other arguments in opposition to the Motion to Dismiss.